## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BELL SOUTH TELECOMMUNICATIONS, LLC D/B/A AT&T LOUISIANA** | **CIVIL ACTION** |
| **VERSUS** | **NO:  13-5976** |
| **THE CITY OF NEW ORLEANS** | **SECTION: "S" (3)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by plaintiff, BellSouth Telecommunications, LLC, d/b/a AT&T Louisiana, (Doc. #18) is **GRANTED**, and plaintiff is awarded $874,169.22, plus pre-judgment interest at the interest rate due under Louisiana law beginning on July 31, 2012, and post judgment interest at the interest rate due under Federal law from the date of this judgment until paid.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment filed by defendant, The City of New Orleans (Doc. #20) is **DENIED**.

## BACKGROUND

This matter is before the court on cross-motions for summary judgment.  Plaintiff, BellSouth Telecommunications, LLC, d/b/a AT&T Louisiana, argues that it is entitled to summary judgment finding that the 2011 Ordinance enacted by the City of New Orleans to collect payments from BellSouth was void ab initio as unconstitutional, and seeks a refund of the money it paid the City under that ordinance, plus interest.  The City, on the other hand, argues that the 2011 Ordinance was never declared unconstitutional by the United States Court of Appeals for the Fifth Circuit and, therefore BellSouth is not entitled to a refund.

The history of this case relates to two prior, consolidated lawsuits filed in the United States District Court for the Eastern District of Louisiana (Civil Action Nos. 09-151 and 11-2116).  Orders

in both of those suits were appealed to the United States Court of Appeals for the Fifth Circuit,

which explained the pertinent background as follows:

> The City of New Orleans ("the City") filed suit against BellSouth Telecommunications, L.L.C. ("BellSouth," or "the company"), claiming that the company owed it additional compensation for the use of its public rights-of-way. After a bench trial, the district court issued findings of fact and conclusions of law that rejected the City's claims for additional compensation pursuant to the various contracts between the parties. However, the court awarded the City unjust enrichment damages in the amount of $1,549,240.93 to compensate the City for benefits the company had received from its use of the City's rights-of-way from the end of 2006 to the time of judgment. Both parties appealed.

> After the court entered an order indicating its method for calculating the amount of unjust enrichment damages, the City enacted an ordinance [Ordinance No. 24,547 ("the 2011 Ordinance")] intended to force BellSouth to continue compensating the City in future years for the unjust enrichment identified by the district court. BellSouth moved for a preliminary injunction to enjoin the City from enforcing the ordinance pending its appeal from the district court's judgment. The district court denied the injunction. BellSouth appealed, and we consolidated the various appeals.

*       *       *

> The parties' contractual relationship began in 1879 when the City Council enacted Ordinance No. 4906 ("1879 Ordinance"). Section 1 of the 1879 Ordinance authorized BellSouth

>> to construct and maintain a line or lines of telegraphs through the streets of this city, the line or lines to be constructed along such streets, at such points and in such manner as to the kind and position of the telegraph poles, the height of the wires above the streets, and in all other particulars, as the Administrator of the Department of Improvements of this city may direct; provided, however, that the said company shall connect their wires with the Mayor's office, chief of police office and fire alarm telegraph office, and place and keep telephones therein, free of charge to the city, so that the said telephones may be used in connection with all wires under the control of said company.

> New Orleans, La., Ordinance 4906 (Feb. 18, 1879).

Section 2 of the 1879 Ordinance provided "[t]hat all the acts and doings of said company under this ordinance shall be subject to any ordinance or ordinances that may hereafter be passed by the City Council concerning the same." Id. BellSouth provided the free phones to the City and used the City's rights-of-way to construct and maintain telecommunications lines pursuant to the 1879 Ordinance.

In 1880, the Louisiana legislature enacted Act. 124, which granted corporations formed "for the purpose of transmitting intelligence by magnetic telegraph or telephone or other system of transmitting intelligence, the equivalent thereof which may be hereafter invented or discovered" the right to "construct [and] maintain such telegraph, telephone or other lines necessary to transmit intelligence along all State, parish or public roads or public works." 1880 La. Acts 168 (codified as amended at LA.REV.STAT. § 45:781(A)). The Act also permitted companies to construct and maintain lines "along the streets of any city, with the consent of the council or trustees thereof." Id.

Apparently discontent with its consideration under the 1879 Ordinance, the City passed a new ordinance in December 1883, which purported to "regulate and control the erection and maintenance of poles for supporting wires of the telephones within [the City]"; the Ordinance provided, *inter alia,* that

> No poles shall be allowed to be erected, *or any existing poles be allowed to remain,* in [a certain] portion of the city ..., *except on the payment of $5 per annum per pole for every such pole* erected or *at present in use* within that section of the city[;] said payments to be *in consideration of the privilege and advantage of entering upon, using, and permanently occupying the streets, ways and places of the city for private property,* and to be paid annually in advance ....

City of New Orleans v. Great S. Tel. & Tel. Co., 3 So. 533, 534 (La.1888) (citation omitted).

The City filed suit to enjoin BellSouth from using or maintaining the 600 poles it had erected in a designated portion of town until the company paid the amount due under the 1883 Ordinance. On appeal, the Louisiana Supreme Court invalidated the 1883 Ordinance, holding that the City could not exact additional consideration from BellSouth for the company's "continued enjoyment of privileges already granted." Id. at 535. The court concluded that because BellSouth had complied with the conditions of the 1879 Ordinance, the City's "grant of authority" to BellSouth had become an "irrevocable contract, and the city is powerless to set it aside or to interpolate new or more onerous considerations therein." Id. (citing Trustees of Dartmouth College v. Woodward, 17 U.S. (4 Wheat.) 518, 4 L.Ed. 629 (1819)).

In 1906, the City inquired "whether [BellSouth] would be willing to pay [the City] a considerable sum per annum for the use of the streets." BellSouth responded to the inquiry by letter. The company first stated that it was "in the enjoyment of a grant, made in 1879, which gave it for legal consideration the right to conduct its business and make use of the streets, and cannot therefore make any payment or contribution to the City as a consideration for a grant already acquired." However, "recognizing the fact that the grant has by reason of the great development of the telephone business proved to be of great benefit to the Company," BellSouth expressed its "willing[ness] to pay to the [City], quarterly, ... three (3) per cent of its gross receipts from rentals paid by telephone subscribers for rental of telephones in [the City], so long as [BellSouth] is alone operating in the city." The company further qualified its offer as follows: "Should any other person or company acquire the right to conduct a telephone exchange or business in the City, the Company would not feel justified in continuing its payments, and would cease to make them."

In response, the City Council adopted a motion to accept BellSouth's tender of 3% of its gross receipts for local telephone rentals, but "with the reservation that said tender ... and the acceptance of said [tender] ... shall in nowise constitute a contract between [BellSouth] and the [City] or bind the [City] to hereafter grant no other privileges for the use of streets in connection with the telephone business." BellSouth began making payments under the 1906 Agreement.

In 1916, BellSouth sent a letter to the City's Commissioner of Public Property, purporting to confirm a previous conversation involving BellSouth and certain City officials. In the letter, BellSouth agreed to provide the City with telephone service at regulated rates, less a 33.33% discount; the parties also agreed that the discount "would apply to all classes of service which are or may be furnished to the City or any of its Departments." The letter further stated that BellSouth would provide the City with 25 additional telephones, free of charge, "[i]n addition to the three free telephones which the Company furnishes to the City under its franchise obligation." BellSouth does not appear to have received any explicit consideration for its "additional" concessions in the 1916 Letter Agreement.

In 1984, the divestiture of AT&T broke the company into several smaller companies, including BellSouth. Under the divestiture, BellSouth could no longer own or provide telephone equipment to its customers. Accordingly, BellSouth could no longer provide free telephones to the City as required by the 1879 Ordinance and the 1916 Letter Agreement. To solve this problem, the parties entered into the 1984 Concession Agreement. Under the Agreement, BellSouth agreed to make a lump sum payment of $417,285.18 to "cover the City's budgetary deficit for one year on the equipment portion of the concession," in exchange for the City's agreement "to a cap on the lines and service portion of the concession at the present dollar value, i.e., $31,407.21 monthly." The parties further agreed that the 1984 Concession Agreement would only amend the 1916 Letter Agreement, and it would not waive

any of the City's other rights, including its rights under the 1906 Agreement—that is, BellSouth's obligation to pay the City 3% of its gross receipts from local recurring revenue. BellSouth has fulfilled its obligations under the 1984 Agreement, which involve making payments totaling $376,886.52 annually.

In 1996, the City Council enacted the Ordinance of General Applicability ("OGA"), to provide for uniform procedures, terms, conditions and compensation for telecommunications franchises that use the City's rights-of-way. New Orleans, La., Ordinance 17,560 (Feb. 1, 1996). The OGA applies to all franchisees occupying the City's rights-of-way for the purposes of regulating the installation, maintenance, repair and/or operation of wired telecommunications systems. However, the OGA distinguishes between new and existing franchisees to the extent it regulates the compensation owed to the City for the use of its rights-of-way. For compensation purposes, the OGA applies to pre-existing franchises only if those franchises "acknowledge susceptibility to an [OGA]." Id. The OGA provides that pre-existing franchises that do not acknowledge susceptibility to an OGA "shall remain subject to all existing provisions of such pre-existing franchise, as well as being subject to [certain non-compensation parts of the OGA]." Id. The compensation provisions of the OGA do apply, however, to all pre-existing franchises when they are renewed.

In early 2000, the City informed BellSouth of its belief that the company owed it an additional $7,250,983 under the 1906 agreement for the years 1997–1998[FN2] When BellSouth refused to pay, the City filed suit in Louisiana state court (1) to recover the outstanding compensation due under the 1906 Agreement and (2) to obtain a declaration that all future payments under the 1906 Agreement must be based upon 3% of the company's total gross receipts from the City, as opposed to 3% of its gross receipts from local recurring telephone services. BellSouth removed the suit to federal court and filed a counterclaim seeking (1) a declaration that the 1906 Agreement had terminated since BellSouth was no longer the exclusive provider of telecommunications services in the City and (2) a return of all payments made under the 1906 Agreement after BellSouth was no longer the exclusive provider of telecommunications services in the City.[FN3]

FN2. In 1994, the City had made a similar claim, and it had demanded additional compensation from the company under the 1906 Agreement. BellSouth eventually agreed to pay the City $2.5 million as a credit against any future liability under the 1906 Agreement; BellSouth did not admit liability.

FN3. The Federal Telecommunications Act of 1996 definitively introduced competition into the City's market for telephone services. Nevertheless, BellSouth continued to make payments to the City under the 1906 Letter Agreement after other telecommunications providers had begun providing services in the City.

In 2001, the parties settled their lawsuit and entered into the 2001 Settlement Agreement, which was ratified by the City Council. The 2001 Settlement Agreement was "intended to fully and completely compromise, settle and finally terminate all of the disputes, claims and causes of action by and between BellSouth and the City with respect to the agreements and ordinances described herein and in the Pending City Suit." The Settlement Agreement contained the following material terms: (1) the City expressly recognized the grant of rights conferred to BellSouth by the 1879 Ordinance, as interpreted and confirmed by the <u>Great Southern</u> court; the City also expressly recognized that it was not entitled to seek additional compensation or consideration from BellSouth for the rights conferred by the 1879 Ordinance; (2) the parties expressly recognized that the 1906 Agreement had terminated because other companies had acquired the right to conduct telephone business in the City; (3) BellSouth agreed to pay the City a fixed, annual amount of $5.5 million for six years, terminating in January 2006; and (4) the parties mutually released each other from all claims, whether known or unknown, that in any way concerned the 1879 Ordinance, the 1906 Agreement, or the 1984 Concession Agreement.

As "further consideration for the settlement embodied in th[e] agreement": (1) the Mayor agreed to publicly support state Simplified Tax Legislation; and (2) if Louisiana did not pass Simplified Tax Legislation prior to January 2007, the parties agreed that the City could elect, by ordinance "during the calendar year 2007," to enter into a Local Municipality Agreement ("LMA"), which would require BellSouth to pay the City 5% of its gross revenues from certain BellSouth Accounts. The Settlement Agreement provided that the LMA would have a maximum primary term of five years, and that it could be extended for one additional five year term if certain conditions were satisfied.

The Settlement Agreement further provided that the City would have no right to elect to enter the LMA if it failed to meet its obligations under the Agreement, which included the requirement that it enact an ordinance entering into the LMA during the calendar year 2007. Lastly, the parties agreed that the Settlement Agreement "shall form the entire and only agreement between the Parties and that no promises, inducement or other agreement expressed herein has been made."

BellSouth made the required $5.5 million annual payments through 2006. However, Louisiana did not pass the Simplified Tax Legislation, and the City Council did not pass an ordinance entering into the LMA during the calendar year 2007. Accordingly, starting in 2007, BellSouth was only paying the City $376,886.52 annually to use the City's rights-of-way under the 1984 Concession Agreement. When BellSouth refused the City's demand for additional compensation, the City filed the present lawsuit in January 2009.

In its complaint, the City asserted several claims for damages alleging that BellSouth owed it additional compensation for use of its rights-of-way. The City also

sought various forms of declaratory relief that would allow it to subject BellSouth's franchise to the compensation provisions of the OGA. BellSouth answered and denied the City's claims. It also asserted a counterclaim against the City, seeking damages from certain payments it had made to the City pursuant to the 2001 Settlement Agreement and the 1906 Agreement.

The district court held a bench trial, and, in November 2010, it issued its findings of fact and conclusions of law. In its findings and conclusions, the district court agreed with BellSouth that the company did not owe the City additional compensation pursuant to any of the existing agreements between the parties.

First, the district court concluded that the 1879 Ordinance was valid and that Great Southern precluded the City from imposing new or more onerous consideration for the franchise rights granted therein. The court also rejected the City's argument that the 1879 Ordinance only granted the company a franchise to use the City rights-of-way aboveground. The court similarly rejected the City's argument that the 1906 Agreement actually granted BellSouth a franchise right to use the City's below-ground rights-of-way.

Second, the district court concluded that the 1984 Concession Agreement was valid and that it monetized BellSouth's obligations under the 1879 Ordinance and the 1916 Letter Agreement.

Third, the district court concluded that the OGA did not regulate the compensation owed by BellSouth to the City for its franchise rights under the 1879 Ordinance. The court found that BellSouth's 1879 franchise rights preexisted the OGA, did not acknowledge susceptibility to the OGA, and had not been renewed since the passage of the OGA. Similarly, because the district court concluded that the 1906 Agreement did not grant any franchise right to BellSouth, it determined that the OGA did not apply to whatever benefit the company received from the 1906 Agreement.

However, the district court disagreed with BellSouth's interpretation of the parties' contracts in two important respects. First, the court determined that BellSouth entered into the 1906 Agreement in exchange "for some benefit other than exclusivity." It based that conclusion on (1) the City's refusal to provide BellSouth with exclusivity in 1906, (2) BellSouth's decision to continue making the payments even after competition entered the telecommunications market, and (3) the fact that BellSouth did not raise an exclusivity claim regarding the 1906 payments until it brought a counter-claim in the 2000 litigation. The district court further concluded that the 1906 Agreement granted BellSouth a benefit in addition to and separate from its 1879 franchise rights. However, the court acknowledged that it could not identify the exact benefit that BellSouth did receive from the 1906 Agreement.

7

Second, the district court rejected BellSouth's contention that the "further consideration" provisions of the 2001 Settlement Agreement—Simplified Tax Legislation and the LMA—were exclusive. Specifically, the court concluded that the inclusion of the two "further consideration" provisions in the 2001 Settlement Agreement "indicated that the parties contemplated compensation would be paid by BellSouth to the City post–2006 in addition to BellSouth's payments to the City pursuant to the 1984 Concession Agreement." The court related this conclusion to its prior determination that the 1906 Agreement conferred an unknown benefit to BellSouth: that is, the court concluded that the parties intended the "further consideration" as compensation for the unknown benefit BellSouth would continue to receive from the 1906 Agreement. It concluded that the failure to enact either of the enumerated "further consideration" conditions did not "foreclose the City from receiving compensation from BellSouth post–2006 for the benefits BellSouth has enjoyed and continues to enjoy which were granted originally in the 1906 Agreement." However, the court determined that no valid agreement governed the amount of compensation BellSouth owed to the City post–2006 for the benefits it was continuing to receive from the 1906 Agreement.

Because the court determined that "no agreed upon method of payment has been in place from 2006," it concluded that "the doctrine of unjust enrichment must be used to define the extent of BellSouth's obligation to pay the City for the benefits it has been receiving post–2006 which originally derived from the 1906 Agreement and later were recognized in the 2001 Settlement Agreement." In particular, the court concluded that the equities of the situation merited an award of unjust enrichment damages under Louisiana law; the court concluded that BellSouth had no justification for failing to "compensate the City post–2006 since the parties contemplated that payments would continue after 2006 and BellSouth has continued to enjoy the same benefits post–2006 as when it was previously making payments to the City pursuant to the 1906 Agreement and the 2001 Settlement Agreement."

The district court eventually decided to use the amount BellSouth would have paid if the City had decided to enact the LMA, minus a credit to BellSouth for discounts it gives to the City on services, as a basis for calculating the unjust enrichment damages. Following this formula, the district court entered judgment in favor of the City in the amount of $1,549,240.93 to compensate the City for the company's use of its rights-of-way from the end of 2006 to the time of judgment. Both parties timely filed notices of appeal.

The district court's pre-judgment orders indicated that BellSouth should make "similar payments for subsequent years, unless the rights and obligations of the parties change so as to no longer require such payments." A month after the court's judgment was entered, the City passed the 2011 Ordinance in order to set the compensation BellSouth would have to pay the City in future years for the benefits it would receive "in excess of such benefits received by said company pursuant to

[the 1879 Ordinance]." New Orleans, La., Ordinance 24,547 (July 7, 2011). As the district court described the 2011 Ordinance, it is "an effort to legislate future unjust enrichment payments" by requiring "BellSouth to pay five-percent of its gross revenues 'derived from its business in [the City].' "

BellSouth filed a motion seeking a preliminary injunction to enjoin the enforcement of the 2011 Ordinance, contending *inter alia,* that it violates <u>Great Southern</u> and the district court's earlier rulings. The district court denied BellSouth's request for a preliminary injunction, primarily concluding that the 2011 Ordinance properly "carve[d] out <u>Great Southern</u>" by expressly stating that the City was seeking compensation for benefits "in excess" of those granted by the 1879 Ordinance. Thus, the district court concluded that enjoining the 2011 Ordinance would effectively overturn its 2009 judgment awarding unjust enrichment damages. BellSouth appealed, and we consolidated the parties' various appeals.

<u>City of New Orleans v. BellSouth Telecomm., Inc.</u>, 690 F.3d 312, 316-323 (5th Cir. 2012).

On February 17, 2012, while the appeal was pending, Bell South paid the City $874,169.22,

pursuant to the 2011 Ordinance.  Bell South specified that the payment was made "under protest."

On September 12, 2012, the United States Court of Appeals for the Fifth Circuit affirmed

the district court's findings of fact and conclusions of law "to the extent the court rejected the City's

claims for damages." <u>Id.</u> at 316. The appellate court concluded:

that the 1879 Ordinance prevents the City from unilaterally increasing the consideration owed to it by BellSouth for both present *and* future uses of its rights-of-way. In <u>Great Southern,</u> the Louisiana Supreme Court invalidated an 1883 Ordinance, in which the City had attempted to require BellSouth to pay "*$5 per annum per pole for every*" pole "erected or *at present in use*" in a part of the City. 3 So. at 534. The 1883 Ordinance plainly attempted to impose additional consideration on BellSouth for both its existing and future uses of the City's rights-of-way. <u>See</u> <u>id.</u> ("No poles shall be allowed to be erected, ... *except on the payment of $5 per annum per pole for every such pole* erected ....") (citation omitted). Accordingly, because the <u>Great Southern</u> court struck down the 1883 Ordinance in its entirety, we agree with the district court that the holding in <u>Great Southern</u> prevents the City from unilaterally increasing the consideration required by the 1879 Ordinance for both present and future uses of the City's rights-of-way.

<u>Id.</u> at 323.  The court also concluded "that the 1879 Ordinance granted BellSouth a franchise right

to use the City's rights-of-way both above and below the surface." <u>Id.</u>  Further, the court "reject[ed]

the City's argument that it was the 1906 Agreement that granted the company a franchise to place its lines underground," that exclusivity was the only benefit BellSouth received from the 1906 agreement, and that "the City is precluded from arguing otherwise because it expressly acknowledged in the 2001 Settlement Agreement that the 1906 agreement had terminated when the company was no longer the only telephone company operating in the City." Id.

The United States Court of Appeals for the Fifth Circuit also rejected the City's argument that the district court erred by finding that the OGA did not govern the compensation owed by BellSouth for use of the City's rights-of-way because the OGA set the compensation owed under the 1879 Ordnance and for rights and benefits BellSouth had beyond the 1879 Ordinance. Id. at 324-25. The court stated:

> First, we need not decide whether the City intendd for the OGA to regulate the compensation owed by BellSouth under the 1879 Ordinance because the City lacks the authority to unilaterally increase the consideration due for BellSouth's rights under the Ordinance . . . Accordingly, even if the City intended for the compensation provisions of the OGA to apply to the 1879 Ordinance, the OGA would then violate the terms of 1879 Ordinance as interpreted in Great Southern. That is, the OGA would conflict with the 1879 Ordinance by attempting to unilaterally increase the consideration owed by BellSouth for its franchise rights. See id. at 535 ("[T]he city is powerless to set [the grant of authority to BellSouth in the 1879 Ordinance] aside or to interpolate new or more onerous consideration therein.").

> Second, we reject the City's argument that the OGA regulates the compensation owed by BellSouth for the franchise rights "it utilizes beyond those granted under the 1879 Ordinance." In short, the City has failed to establish that BellSouth enjoys any franchise rights beyond those granted to it by the 1879 Ordinance. As we previously concluded, the 1879 Ordinance gave BellSouth the right to use the City's rights-of-way both above and belowground, and, as we will discuss more fully below, the 1906 Agreement did not give the company any additional franchise rights. Thus, the City has not established that BellSouth possesses any franchise rights other than those granted by the 1879 Ordinance.

10

Accordingly, we agree with the district court that the City is not entitled to any additional compensation under any ordinance or the existing contracts between the parties.

Id. at 325.

The United States Court of Appeals for the Fifth Circuit reversed and vacated the district court's unjust enrichment award, and found that the 2011 Ordinance was unenforceable because it was an attempt to codify the unjust enrichment damages. Id. at 326-328. The court found that there was no justification for an award of unjust enrichment damages as any enrichment BellSouth received post-2006 for its use of the City's rights-of-way has a justification in contract because "the City released its claims for additional compensation from BellSouth in exchange for substantial consideration under the terms of the [2001] Settlement Agreement." Id. at 328. As to the 2011 Ordinance the appellate court stated:

> The 2011 Ordinance attempts to legislate future unjust enrichment damages by setting the compensation BellSouth must pay the City in future years for the benefits it receives "in excess of such benefits received by said company pursuant to [the 1879 Ordinance]."

> However, as we have already held, the district court's unjust enrichment award was based on an erroneous assumption that BellSouth received some "indeterminate benefit" from the 1906 Agreement apart from exclusivity and the franchise rights granted in the 1879 Ordinance. Thus, the 2011 Ordinance merely seeks to increase the consideration BellSouth owes to the City for the rights granted to it under the 1879 Ordinance. Accordingly, the 2011 Ordinance violates the Great Southern court's holding that "the city is powerless to set [the grant of authority to BellSouth] aside or to interpolate new or more onerous considerations therein." 3 So. at 535.

> Given our conclusion that the district court erred by awarding unjust enrichment damages, the City necessarily lacks the authority to enforce the 2011 Ordinance, which attempts to codify those unjust enrichment damages.

Id. at 329. The court further explained:

> the City recognized the validity of the Great Southern decision in the 2001 Settlement Agreement. In the agreement, the City

11

> expressly recognize[d] the grant of rights conferred to BellSouth by the 1879 Ordinance, as interpreted and confirmed by the <u>Great Southern</u> court. Specifically and without limitation, the City recognizes, as the <u>Great Southern</u> Court held, that the City is not entitled to seek additional compensation or consideration from BellSouth for the rights conferred by the 1879 Ordinance.

> Given this acknowledgment of the continuing force of <u>Great Southern,</u> we conclude that the City is precluded from arguing that <u>Great Southern</u> improperly limits the consideration it can demand for the rights granted to BellSouth by the 1879 Ordinance. <u>See</u> LA. CIV.CODE ANN. art. 3076; <u>Brown</u>, 630 So.2d at 748–50.

<u>Id.</u> at 329-330.  The appellate court remanded the case to the district court with instructions to permanently enjoin the City from enforcing the 2011 Ordinance. <u>Id.</u> at 330.

After the district court entered the permanent injunction, BellSouth requested that the City refund the $874,169.22.  The City refused, and Bell South moved the court to order the repayment. The court denied the motion holding that "[a]n Order to Enforce Judgment is not the appropriate method by which BellSouth may attempt to recover payment made before the Ordinance was enjoined."

Thus, on September 27, 2013, BellSouth filed this action against the City seeking to recover the $874,169.22 it paid "under protest" pursuant to the 2011 Ordinance.  BellSouth alleges that, by referring to <u>Great Southern</u>, which in turn cited <u>Dartmouth College</u>, the United States Court of Appeals for the Fifth Circuit ruled that the 2011 Ordinance was unconstitutional, rendering it void ab initio.  Thus, Bell South argues that it is entitled to a return of the money under the theory of repayment of a thing not owed, Louisiana Civil Code article 2299, or conversion.  Alternatively, Bell South seeks a declaratory judgment that it be permitted to use the amount paid to the City under the 2011 Ordinance as a credit and offset against any future amounts that it may owe to the City.

The City argues that the 2011 Ordinance was not void ab initio because the United States Court of Appeals for the Fifth Circuit never specifically stated that it was unconstitutional. The City argues that the appellate court stated that the city lacked the authority to *enforce* the 2011 Ordinance, not the authority to *enact* it.

## ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c).  If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.  Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

### B.  2011 Ordinance Was Void Ab Initio

As stated above, the United States Court of Appeals for the Fifth Circuit held that the City has no authority to unilaterally increase the amount BellSouth owes to it for the use of its rights-of-way under the 1879 Ordinance, and accordingly, the 2011 Ordinance violates the Great Southern

court's holding.  City of New Orleans, 690 F.3d at 329.  In Great Southern, the Supreme Court of

Louisiana held that the 1879 Ordinance was an "irrevocable contract, and the city is powerless to

set it aside or to interpolate new or more onerous considerations therein." Id. (citing Trustees of

Dartmouth College v. Woodward, 17 U.S. (4 Wheat.) 518, 4 L.Ed. 629 (1819)).  The Dartmouth

College decision upon which Great Southern relies held that a contract cannot be impaired by the

acts of the state without violating the Contract Clause of the Constitution of the United States.[1] See

Dartmouth College v. Woodward, 17 U.S. (4 Wheat.) 518, 4 L.Ed. 629 (1819).  Therefore, because

the United States Court of Appeals for the Fifth Circuit held that the 2011 Ordinance was void ab

initio as unconstitutional under the Contract Clause because it impaired the rights and obligations

set by the 1879 Ordinance, BellSouth's is entitled to a refund of the $874,169.22 it paid under protest

pursuant to the 2011 Ordinance.[2]

---

[1] The Contract Clause, which appears in Article I, Section 10, Clause 1 of the Constitution of the
United States provides:

> No State shall enter into any Treat, Alliance, or Confederation; grant Letters of Marque and
> Reprisal; coin Money; emit Bills of Credit, make any Thing but gold and silver Coin a
> Tender in Payments of Debts; pass any Bill of Attainder, ex post facto Law, or Law
> impairing the Obligation of Contracts, or grant any Title of Nobility.

[2] The City argues that the 2011 Ordinance was in effect with BellSouth paid under protest because
the appellate court stated that the City did not have the authority to enforce the ordinance, not that the City
did not have the authority to enact it.  This argument ignores the United States Court of Appeals specific
references to Great Southern, which lead to the conclusion that the 2011 Ordinance was void ab initio.

## C.  BellSouth's Theories of Recovery

BellSouth alleges three theories of recovery in its complaint: (1) repayment of a thing not owed under Louisiana Civil Code article 2299; (2) conversion[3]; or (3) declaratory judgment that it is entitled to use the money paid under protest pursuant to the 2011 Ordinance to offset amounts it may owe to the City in the future.[4]

Louisiana Civil Code article 2299 provides: "A person who has received a payment or a thing not owed to him is bound to restore it to the person from whom he received it."  Because the 2011 Ordinance was void ab initio, the City of New Orleans received payment of a thing not owed

---

[3]  "Conversion is defined as an act in derogation of the plaintiff's possessory rights or any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently, or for an indefinite time." Chrysler Credit Corp. v. Whitney Nat'l Bank, 51 F.3d 553, 557 (5th Cir.1995).  "The tort of conversion is committed when one wrongfully does any act of dominion over the property of another in denial of or inconsistent with the owner's rights." F.G. Bruschweiler (Antiques) Ltd. v. GBA Great British Antiques, L.L.C., 860 So.2d 644, 649 (La. Ct. App. 2006) (citing Aymond v. State, Dept. of Revenue and Taxation, 672 So.2d 273, 275 (La Ct. App. 1996)).  Specifically, the tort of conversion is committed when any of the following occurs: (1) possession is acquired in an unauthorized manner; (2) the chattel is removed from one place to another with the intent to exercise control over it; (3) possession of the chattel is transferred without authority; (4) possession is withheld from the owner or possessor; (5) the chattel is altered or destroyed; (6) the chattel is used improperly; or (7) ownership is asserted over the chattel. Daul Drilling Co. v. Mills Equip. Inv., Inc., 721 So.2d 853, 856 (La. Ct. App. 1998).  In order to prevail on a claim of conversion under Louisiana law, the plaintiff must prove that: (1) he owned or had the right to possess funds that were misused by the defendant; (2) the misuse was inconsistent with the plaintiff's rights of ownership; and (3) the misuse constituted a wrongful taking of the funds. Chrysler Credit Corp. v. Whitney Nat'l Bank, 798 F.Supp. 1234, 1236-37 (E.D .La.1992) (citing Chrysler Credit Corp. v. Perry Chrysler Plymouth, 783 F.2d 480, 484 (5th Cir.1986)).

[4]  The federal Declaratory Judgment Act states: "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.  "A federal court may not issue a declaratory judgment unless there exists an 'actual controversy'; i.e., there must be a substantial controversy of sufficient immediacy and reality between the parties having adverse legal interests." Middle S. Energy, Inc. v. City of New Orleans, 800 F.2d 488, 490 (5th Cir. 1986).  A controversy is justiciable only where "it can be presently litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop." Rowan Cos. v. Grim, 876 F.2d 26, 28 (5th Cir. 1989) (quoting Brown & Root, Inc. v. Big Rock Corp., 383 F.2d 662, 665 (5th Cir. 1967)).  It gives federal courts the competence to declare rights, but it does not impose a duty to do so.  If there is jurisdiction, whether to grant a declaratory judgment is within the sound discretion of the trial court.

to it and is bound to restore it under Louisiana law.  Therefore, the City must repay the $874,169.22 to BellSouth.[5]

## D.  Interest

"The setting of prejudgment interest rates is committed to the broad discretion of the district court."  Superior Derrick Servs., L.L.C. v. LONESTAR 203, 547 Fed. Appx. 432, 443 (5th Cir. 2013).  "Under 28 U.S.C. § 1961(a), in diversity cases, post-judgment interest is calculated at the federal rate, while pre-judgment interest is calculated under state law." Boston Old Colony Ins. Co. v. Tiner Assocs., Inc., 288 F.3d 222, 234 (5th Cir. 2002).  Prejudgement interest generally runs from the date of the loss, but it is within the court's discretion to find that interest should run from the date of judicial demand if there was a delay in filing suit or other factors making the precise date of the loss difficult to determine. See Superior Derrick Servs., 547 Fed. Appx. at 443.

In this case, BellSouth is awarded pre-judgment interest at the interest rate due under Louisiana law beginning on July 31, 2012, the date on which the United States Court of Appeals for the Fifth Circuit held that the 2011 Ordinance was void ab initio, because that is when it became clear that the payment was  not owed.  BellSouth is also awarded post judgment interest at the interest rate due under Federal law from the date of this judgment until paid.

## CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by plaintiff, BellSouth Telecommunications, LLC, d/b/a AT&T Louisiana, (Doc. #18) is **GRANTED**, and plaintiff is awarded $874,169.22, plus pre-judgment interest at the interest rate due under Louisiana

---

[5] Because the court finds that BellSouth is entitled to a refund of the money under Louisiana Civil Code article 2299, it is unnecessary to consider BellSouth's alternative argument that the money it paid under protest pursuant to the 2011 Ordinance, plus interest, should be used to offset amounts it may owe to the City in the future.    The City does not specifically ask that the court address the repayment in that manner.

law beginning on July 31, 2012, and post judgment interest at the interest rate due under Federal law

from the date of this judgment until paid.

      **IT IS FURTHER ORDERED** that the Motion for Summary Judgment filed by defendant,

The City of New Orleans (Doc. #20) is **DENIED**.

New Orleans, Louisiana, this   <u>7th</u>  day of July, 2014.

                              **MARY ANN VIAL LEMMON**
                        **UNITED STATES DISTRICT JUDGE**

17